### SANDBERG v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 19, 1919.)

#### No. 3187.

WAR ⬠4—ESPIONAGE ACT—SEDITIOUS STATEMENTS.
    Statements made by defendant, in each case to a single person in the course of a private conversation relating to the war, *held* mere expressions of opinion, not made in violation of section 3 of the Espionage Act.

In Error to the District Court of the United States for the District of Arizona; William H. Sawtelle, Judge.

Criminal prosecution by the United States against August Sandberg. Judgment of conviction, and defendant brings error. Reversed.

C. N. Gary, of Oakland, Cal., and A. A. Worsley, of Tucson, Ariz., for plaintiff in error.

Crittenden Thornton, of San Francisco, Cal., amicus curiæ.

Thomas A. Flynn, U. S. Atty., of Phœnix, Ariz., C. R. McFall, Asst. U. S. Atty., of Tucson, Ariz., John W. Preston, Sp. Asst. Atty. Gen., and Caspar A. Ornbaun, of San Francisco, Cal., for the United States.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. Section 3 of the act of Congress known as the Espionage Act, approved June 15, 1917, is as follows:

"Sec. 3. Whoever, when the United States is at war, shall willfully make or convey false reports or false statements with intent to interfere with the operation or success of the military or naval forces of the United States or to promote the success of its enemies, and whoever, when the United States is at war, shall willfully cause or attempt to cause insubordination, disloyalty, mutiny, or refusal of duty, in the military or naval forces of the United States, or shall willfully obstruct the recruiting or enlistment service of the United States, to the injury of the service of the United States, shall be punished" in a prescribed way. 40 Stat. 219, c. 30, tit. 1 (Comp. St. 1918, § 10212c).

The plaintiff in error was charged by indictment containing six counts with certain violations of that law. A demurrer to the fourth count was sustained, and demurrers to each of the other counts were overruled, followed by his trial, conviction, and sentence. The first count charged that the defendant on a certain named day in Decem-

ber, 1917, within the district of Arizona, with intent to interfere with the operation and success of the military and naval forces of the United States, did willfully make this false statement in the presence of one Robert E. Cameron and other persons to the grand jurors unknown:

"That our entry into the war was brought about by the Wall Street interests, in order to protect our foreign loans to the Allies."

By the second count it was alleged that the defendant willfully attempted to cause insubordination, disloyalty, mutiny, and refusal of duty in the military and naval forces of the United States, in that he did on the 22d of July, 1917, within the district of Arizona, in the presence of one E. M. Graham and other persons to the grand jurors unknown, make this statement:

"That the German government was much more democratic than ours; that the German people enjoyed greater liberties than the Americans; that it will be a great blow to civilization if Germany should lose."

By the third count it was charged that the defendant willfully attempted to cause similar insubordination, disloyalty, mutiny, and refusal of duty by making, in the presence of Eugene H. Broughton and other persons to the grand jurors unknown, this statement:

"That the Germans had a better form of government than the people of America, that President Wilson was a weak character to allow England to dictate its policy, and then the President coming out and making speeches to back up the British policies."

By the fifth count the defendant was charged with having on the 15th of December, 1917, within the district of Arizona, willfully attempted to cause similar insubordination, disloyalty, mutiny, and refusal of duty, in that he did make, to Robert E. Cameron and other persons to the grand jurors unknown, this statement:

"That the invasion of Belgium by Germany was justified, also that the submarine warfare carried on by Germany was right and legitimate, and that the sinking of the Lusitania was justified, on account of its carrying arms, munitions, and supplies."

The sixth count charged that the defendant, on the 22d of February, 1918, in the district of Arizona, did willfully attempt to cause similar insubordination, disloyalty, mutiny, and refusal of duty, in that he did, in the presence of William B. Cramer and other persons to the grand jurors unknown, make this statement:

"That Germany is not as much of an autocracy as the United States, because the United States does not permit criticism. There is not as much danger of revolution in Germany as in the allied countries, including the United States."

Assuming, but not holding, that the court below was correct in overruling the demurrers to the above-stated counts of the indictment, a careful reading of the record satisfies us that it was in error in not granting the motion that was made on behalf of defendant at the conclusion of all the evidence, and direct a verdict for the defendant.

The record shows that the plaintiff in error, who is a native of

Sweden and a graduate of the University of that country in chemistry, geology, and mineralogy, came to the United States in 1896, since which time he has been pursuing his profession in this country, Mexico, and Canada, having been much of the time in the employ of the Phelps-Dodge Corporation as consulting metallurgist, in which capacity he was employed at the time of his indictment and arrest. It appears that in December, 1912, he made application for admission to citizenship of this country; that he has three brothers who are such citizens, and two nephews who volunteered in the United States Navy. And while he admits in his testimony that, prior to the entry of the United States into the war, his sympathies were in favor of Germany as against England, there is a total lack of any showing in the evidence of any incriminating act on his part, other than the statements made by him to the several persons named in the indictment; in each instance in the course of private conversation while the two were traveling companions and friends, and in neither instance in the presence of any third party. In each instance there is some difference between the testimony of the witnesses for the government and that of the defendant in the case regarding his statements to them, and it is, of course, clear that for the purposes of our decision we must accept as correct their testimony as against his.

The first and fifth counts of the indictment, as will have been seen, relate to statements alleged to have been made by the defendant to Robert E. Cameron, in the first of which the charge is that the defendant said:

"That our entry into the war was brought about by the Wall Street interests, in order to protect our foreign loans to the Allies."

And in the other of those counts the charge is that he said to Cameron:

"That the invasion of Belgium by Germany was justified, also that the submarine warfare carried on by Germany was right and legitimate, and that the sinking of the Lusitania was justified, on account of its carrying arms, munitions, and supplies."

The substance of the testimony of Cameron, and the whole of it as stated in the record, is as follows:

"I am 36 years of age; am the testing engineer for Phelps-Dodge; have known Dr. Sandberg four years. We talked about the war on two occasions, December 6 and 26, 1917, on the way from Douglas to Bisbee. He talked almost continuously about the war, saying that the United States was more autocratic than Germany, because it suppressed criticism. He said the American people thought the income tax was higher in Germany, but that taxes were getting much higher in the United States, and the people would not stand for it. He talked about Dr. Dye, formerly assistant manager of the Phelps-Dodge Corporation, being in the diplomatic service, and having gone to Norway to investigate conditions in Sweden, and that he might see Dr. Dye over there, as he had a position there, if he could get out with his stuff. He explained 'his stuff' as meaning his notes. He said he would not take his money to Sweden, as American money is only worth 60 cents on the dollar. He said the submarine warfare was right and legitimate. His reasons for it I do not remember. He said the sinking of the Lusitania was right, on account of it carrying munitions to the Allies." The witness said he did not remember whether these statements were made in 1915 or 1916. He said he

did not mention it to any one for a long time afterwards. "He said the American diplomatic service was about as useful as a bunch of 10 year old boys. I do not know what Dr. Sandberg's intentions were in talking about the war, and did not think about it at that time. I did not mention the conversation to any one, except to one party, until the Secret Service asked me about it, three months after the first conversation, and two months after the second."

The mere perusal of that testimony shows that it contains nothing even tending to support the charge in the first count of the indictment, even if it could be held that the statement there counted on was anything more than the mere expression of opinion; and so far as the testimony of the witness goes to sustain the statements alleged in the fifth count to have been made by the defendant, they having been made long prior to the enactment of the law upon which the indictment is based, it is obvious that they cannot be held to have constituted any crime.

In support of the second count is the testimony of the witness Graham, which is as follows:

"My name is Edward M. Graham: am 38 years old; represent W. S. Tyler Company, manufacturers of mining machinery. I have known August Sandberg for four—about four—years in a business way. He talked once with me regarding this war, July 22, 1917, at the Gadsden Hotel, in Douglas, Ariz., starting the conversation. No one else was present. He (Mr. Sandberg) said that Germany had a more democratic government than the United States; that the people had greater liberties in Germany. He gave me the name of a book to read on that subject. The name of the book was 'Comparison of Constitutional Law' by Prof. Burges. He referred me to another book concerning England in the war by Thompson. That was in connection with England being to blame for the war.

"He stated that it would be a great blow to civilization if Germany should lose the war; that President Wilson was pro-British, and led the American people into the war." Witness said he did not know whether the statements made with reference to governments, including Germany and ours, were true or false. He did not mention it to any one for a long time afterwards.

The third count is based upon what the defendant is alleged to have said to Broughton, whose testimony, given in support of that charge, is as follows:

"I am 30 years old. I know Dr. Sandberg in a business way. He talked with me about the war in the office of the test mill at Bisbee, between December 5 and December 10, 1917, and also in June or July, 1917. Dr. Sandberg said to me that in a speech that the President had made he said that America and the Allies will fight Germany and her Allies until the German people will overthrow the present form of government and establish a democratic form, and will not make peace with the present rulers of Germany. He said the President was wrong in saying that, because the German people did not want a different form of government; that their form of government was more democratic than the government of the United States; that President Wilson had more powers than the Kaiser; that President Wilson could declare war, and the Kaiser could not. He said the President had a weak character in allowing the British to dictate his policies and the President to make speeches on those policies, so the people would back the President up in his policies. The witness said there was an article written in a magazine, the 'Review of Reviews,' November 17th, by Frank Simonds, entitled 'England's Great Fight.' Part of this article was about the gradual wearing away of the male members of the German army, or the killing off of the male Germans. Mr. Simonds compared the present conflict with a hare and hound chase. Hounds are em-

ployed to run down a hare, one hound would run the hare until he was tired, and then the second hound would take up the chase, and so on. France was compared to the first hound, England to the second, and the United States the third. The United States was to deliver the final blow, or kill the males of the German army. He said it was the most brutal thing he ever heard of; that it was like the American savage of long ago; that, if that was the opinion of the American people, it showed a very uncivilized people. He said the President had a weak character in allowing the British to indicate his policies. He said that, if the American people were of the opinion of the writer, it showed a very uncivilized people. This conversation was called out by a magazine containing the article lying on my desk, and Dr. Sandberg saw it. One other thing I can remember he said, when I told him about the things I had been through in training camp, as a reserve officer in the regular army. He said the rate of deaths per thousand in the cantonments in the Middle West was very high, much more as to number, as he remembered, in this country, than they were in his country, when they were mobilized."

Witness said he did not regard any of the statements as an attempt to influence him to be unpatriotic, and that the discussion came up, and that there was no feeling manifest one way or the other. He said that he had full confidence in Dr. Sandberg in every way; that he had no suspicion whatever that Dr. Sandberg, the defendant, was an enemy of the country, and that his conduct and what he said did not lead him to believe that he was attempting to hinder the operation of the war. He did not mention it to any one for quite a long time afterwards.

The sixth and last count is based upon what the defendant is alleged to have said to Cramer, whose testimony is as follows:

"One statement Dr. Sandberg made on or about February 13, 1918, I remember very well, and in particular was that he said to his mind the entry of the United States into the war was brought about by Wall Street interests, for the purpose of protecting our loans to the Allies. He stated that Germany was perfectly justified in the invasion of Belgium and made the inference— (Worsley objected to the inference. Objection sustained by the court.) And stated that it was a well-known fact that, if Germany had not invaded Belgium, France or England had planned to go through Germany in that way. He stated that the sinking of the Lusitania was justified, inasmuch as it carried arms and munitions, and when I remarked to him, 'Can you possibly say that that you think the sinking of the Lusitania was justified?' he said quite heatedly that Germany had not started this submarine warfare until England had strewn the North Sea with mines, and that we read only of boats and people lost as the result of German submarines, but heard nothing of the ships that went down as a result of the laying of mines in the North Sea. He stated that to his mind the ruthless submarine campaign of Germany was all right. He stated that Germany was not as much an autocratic country as the United States; that there was a whole lot more danger of revolution in the allied countries, including the United States, than in Germany. He stated that Germany and the Kaiser did not start the war, and went on to explain that the Kaiser did not have the power to start the war, as he had to be backed by the Reichstag and the Bundersrath, and he laid the blame for the war particularly on England. He said England was to blame for the war. He said Earl Gray was to blame for the war. He said he did not think President Wilson was doing right, appealing to the German people to overthrow the Kaiser, and stating, as the President did at that time, that he would not consider making peace with the present ruling powers. He said that President Wilson was wrong for stating that in states like Alsace-Lorraine it was to be left to the people with what large powers they were to be allied.

"A great many of the statements that Dr. Sandberg made on that day were much the same as made 10 days before, and in addition the doctor delivered a

very interesting discourse on the history of the formation of the German Empire, and he traced that from the time of inception up to the present, and enlightened me on a great many points I had not known as to the powers of the Reichstag and the Bundersrath, and the form of their government."

The witness stated that no one else was present. The witness stated that it did not cause him to have any disloyal feelings towards his country. The witness stated that he was 37 years old, and not of draft age. The witness said that he did not mention anything about the matter for about 3 weeks afterwards. Witness said he did not know absolutely whether the statements made by the defendant were true or false. It is obvious that almost all of the last-quoted testimony relates to statements in no way connected with that charged in the sixth count.

Bearing in mind the fact, already alluded to, that in each instance the several statements made by the defendant were made in the course of private conversation, to a friend and traveling companion, and in neither instance in the presence of any third party, and after carefully considering the language of the defendant so used, we can but regard it as mere matter of opinion, which does not fairly come within the provisions of the act of Congress upon which the indictment is based.

The judgment of the court below must therefore be and hereby is reversed.